UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LACARO ROQUE,

       Petitioner,

       v.

RANDALL HAAS,

       Respondent.[1]

       _____/

CASE NO. 2:08-CV-13373
JUDGE ARTHUR J. TARNOW
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

II.    REPORT ............................................................................ 2
    A.   *Procedural History* ......................................................... 2
    B.   *Factual Background Underlying Petitioner's Conviction* ............................. 5
    C.   *Standard of Review* ......................................................... 6
    D.   *Erroneous Jury Instruction* .................................................. 8
        1.   *Legal Standard* ...................................................... 8
        2.   *Analysis* ........................................................... 10
    E.   *Refusal to Allow Defense Counsel to Conduct Jury Voir Dire* ...................... 11
        1.   *Legal Standard* ...................................................... 11
        2.   *Analysis* ........................................................... 12
    F.   *Improper Notice of the Habitual Offender Notice* ................................ 13
        1.   *Legal Standard* ...................................................... 13
        2.   *Analysis* ........................................................... 14
    G.   *Denial of Allocution* ....................................................... 15
    H.   *Denial of an Interpreter* .................................................... 16
    J.   *Recommendation Regarding Certificate of Appealability* .......................... 16
        1.   *Legal Standard* ...................................................... 16
        2.   *Analysis* ........................................................... 18
    K.   *Conclusion* ............................................................... 18
III.   NOTICE TO PARTIES REGARDING OBJECTIONS: ................................... 19

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

---

[1] By order entered this date Randall Haas has been substituted in place of Cindi Curtain as the proper respondent in this case.

II.   <u>REPORT</u>:

A.   *Procedural History*

1.     Petitioner Lazaro Roque is a state prisoner, currently confined at the Parnall Correctional Facility in Jackson, Michigan.

2.     On June 8, 2005, petitioner was convicted of assault with intent to murder, MICH. COMP. LAWS § 750.83; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; third-degree fleeing and eluding,  MICH. COMP. LAWS § 257.602a(3); carrying a concealed weapon, MICH. COMP. LAWS § 750.227; and possession of a firearm during the commission of a felony (felony firearm),  MICH. COMP. LAWS § 750.227b,  following a jury trial in the Wayne County Circuit Court.  On June 23, 2005, he was sentenced to a term of 25 - 50 years' imprisonment for the assault with intent to murder conviction, two years' imprisonment for the felony-firearm conviction, and three years' imprisonment for each of the remaining convictions.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     THE TRIAL COURT'S INSTRUCTION ON ASSAULT WITH INTENT TO MURDER WAS REVERSIBLY ERRONEOUS IN THAT IT ALLOWED THE JURY TO CONVICT THE DEFENDANT ON LESS THAN ACTUAL INTENT TO KILL CONSEQUENTLY DENYING PETITIONER DUE PROCESS OF LAW UNDER THE 14TH AMENDMENT.

II.     WHERE THE TRIAL JUDGE REFUSED TO ALLOW DEFENSE COUNSEL TO CONDUCT THE JURY VOIR DIRE, CLEAR REVERSIBLE ERROR OCCURRED WHEN THE TRIAL JUDGE FAILED TO ASK ANY QUESTIONS PROBING ANY BIASES OR ATTITUDES OF THE PROSPECTIVE JURORS, REFUSED TO ASK THE VOIR DIRE QUESTIONS SUBMITTED BY DEFENSE COUNSEL, WHICH RESULTED IN STRUCTURAL ERROR AND VIOLATION OF THE 14TH AMENDMENT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Roque*, No. 263855, 2007 WL 28426 (Mich. Ct. App. Jan. 4, 2007) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Roque*, 478 Mich. 870, 731 N.W.2d 753 (2007).

5.      On May 7, 2008, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, which was denied.

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 4, 2008.  As grounds for the writ of habeas corpus, he raised two claims:

I.      THE TRIAL COURT'S INSTRUCTION ON ASSAULT WITH INTENT TO MURDER WAS REVERSIBLY ERRONEOUS IN THAT IT ALLOWED THE JURY TO CONVICT THE DEFENDANT ON LESS THAN ACTUAL INTENT TO KILL CONSEQUENTLY DENYING PETITIONER DUE PROCESS OF LAW UNDER THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

II.     WHERE THE TRIAL JUDGE REFUSED TO ALLOW DEFENSE COUNSEL TO CONDUCT THE JURY VOIR DIRE, CLEAR REVERSIBLE ERROR OCCURRED WHEN THE TRIAL JUDGE FAILED TO ASK ANY QUESTIONS PROBING ANY BIASES OR ATTITUDES OF THE PROSPECTIVE JURORS, REFUSED TO ASK THE VOIR DIRE QUESTIONS SUBMITTED BY DEFENSE COUNSEL, WHICH RESULTED IN STRUCTURAL ERROR AND VIOLATION OF THE 14TH AMENDMENT.

7.      Respondent filed his answer on December, 15, 2008.  He contended that petitioner was not entitled to habeas relief.

8.      This Court granted a stay in order for petitioner to further exhaust available state remedies on September 23, 2009.

9.       On October 9, 2009, petitioner filed a second motion for relief of judgment in the

3

trial court raising the following claims:

I.  APPELLANT ROQUE'S RIGHT TO DUE PROCESS OF LAW UNDER THE STATE AND FEDERAL CONSTITUTIONS (US CONST, AM XIV; CONST 1963, ART 1, §17) WAS DENIED WHERE HIS FOUR PRIOR FELONY CONVICTIONS WERE SCORED, WHEN THESE PRIOR CONVICTIONS WERE NOT SCOREABLE AS THESE PRIOR FELONIES ALL SATISFY THE REQUIREMENTS OF THE "TEN YEAR GAP".

II. APPELLANT ROQUE'S RIGHT TO DUE PROCESS OF LAW UNDER THE STATE AND FEDERAL CONSTITUTIONS (US CONST, AM. XIV; CONST 1963, ART 1, §17) WAS DENIED AS HIS SENTENCES WERE BASED ON INACCURATE INFORMATION, WHERE HE WAS ASSESSED TWENTY POINTS UNDER PRV-7, BY USING HIS LOWER CLASS FELONIES TO SCORE AND RANGE ON A HIGHER CLASS FELONY GRID.

III. APPELLANT ROQUE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE FEDERAL AND STATE CONSTITUTIONS (US CONST, AM VI; CONST 1963, ART 1, §20) WHERE HIS TRIAL ATTORNEY FAILED TO PREPARE FOR TRIAL, FAILED TO INVESTIGATE, FAILED TO PROPERLY OBJECT TO THE ASSESSMENT OF FOUR NON-SCOREABLE PRIOR FELONY CONVICTIONS, AND THE ASSESSMENT OF TWENTY POINTS UNDER PRV-7. MINIMALLY A HEARING MUST BE ORDERED ON THIS POINT.

IV. APPELLANT ROQUE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE FEDERAL AND STATE CONSTITUTIONS (US CONST, AM VI; CONST 1963, ART 1, §20) WHERE HIS APPELLATE COUNSEL NEGLECTED A STRONG, CRITICAL ISSUE WHICH MUST BE SEEN AS SIGNIFICANT AND OBVIOUS.

On January 12, 2010, the trial court denied in part and granted in part petitioner's motion for relief from judgment, concluding that petitioner was denied due process of law by being sentenced, mistakenly, as a fourth habitual offender when he was actually a third. The Michigan Court of Appeals reversed the re-sentencing of petitioner, and the Michigan Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Roque*, 491 Mich. 940,

815 N.W.2d 480 (2010); *People v. Roque*, No. 296197, 2011 WL 4104977 (Mich. Ct. App. Sept.

15, 2011).

10.     Petitioner filed an amended petition on January 8, 2013, where he raised the

additional claim:

> III.     THE DEFENDANT'S SENTENCE REMAINS INVALID WHEN: (1) THE
> PROSECUTION INTENTIONALLY COMMITTED FRAUD UPON THE
> COURT CONCERNING THE "HABITUAL NOTICE," (2) HIS
> SENTENCE WAS BASED ON INACCURATE INFORMATION AND
> WITHOUT SENTENCING INFORMATION FORM SUBMITTED, (3)
> DEFENDANT WAS DENIED HIS RIGHT TO ALLOCUTION, (4) NO
> INTERPRETER WAS PRESENT AT SENTENCING; (5) THE COURT
> SENTENCED THE DEFENDANT OUTSIDE THE RECOMMENDED
> RANGE WITHOUT ARTICULATION AND "SUBSTANTIAL AND
> COMPELLING REASON IN VIOLATION OF MCL 769.34(3), AND (6)
> ON POST-CONVICTION PROCEEDINGS, PROSECUTOR'S FRAUD
> UPON THE COURT CONTINUED.

11.     Respondent filed a supplemental answer to petitioner's amended petition on March,

12, 2013. He contends that petitioner's third claim has been procedurally defaulted and is also

without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

The Michigan Court of Appeals accurately summarized the factual background of the case:

This case arose from a dispute between defendant and the victim, Larry Ryans.
Defendant was staying in the basement of his friend's home. On December 1, 2004,
defendant and the friend, Charles Coppage, were in the basement when the victim
and his father, Larry Taylor, came over to Coppage's home. Shortly after the victim
arrived, defendant and the victim began to argue, and defendant told the victim that
he was paying rent to live in Coppage's basement and that the victim should
therefore leave. Defendant and the victim began to push each other. According to
testimony presented at trial, defendant then went back to his room, returned and shot
the victim in the chest. After he was shot, the victim and his father fled the basement.
Defendant attempted to follow them, but was prevented from doing so by Coppage.
Neither Coppage nor Taylor saw the victim with a weapon, and the victim denied
having any weapons at the time of the shooting. Police arrived at the scene of the
shooting within 30 minutes, and as defendant came back to the home to pick up his

belongings, police officers attempted to stop him and a police chase ensued. Defendant was eventually apprehended by police officers and taken into custody. Gunshot residue and a .380 shell casing were found on defendant's person.

*Roque*, 2007 WL 28426, at \*1.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Erroneous Jury Instruction*

       1.     *Legal Standard*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we

reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Despite this deferential standard of review, a jury instruction will not withstand scrutiny if it submits alternative theories for the jury to convict, one of which is permissible and the other unconstitutional, and the reviewing court cannot determine on which theory the jury relied. *See Zant v. Stephens*, 462 U.S. 862, 881-83 (1983); *Bachellar v. Maryland*, 397 U.S. 564, 571 (1970); *United States v. Wilkinson*, 26 F.3d 623, 625 (6th Cir. 1994). *But see Griffin v. United States*, 502 U.S. 46, 56 (1991) (general jury verdict is valid if sufficient evidence supports one of the grounds for conviction, so long as the other submitted grounds are neither illegal nor unconstitutional, but merely unsupported by the evidence); *United States v. Mari*, 47 F.3d 782, 785-86 (6th Cir. 1995). An instruction is also invalid if it can be viewed by the jury as shifting the burden of proving an

element of the case onto the defendant, as when it instructs the jury to presume that a person intends

to commit the natural, ordinary and usual consequences of his voluntary actions, *see Sandstrom v.*

*Montana*, 442 U.S. 510, 524 (1979), or to presume malice from either an unlawful act or from the

use of a deadly weapon, *see Yates v. Evatt*, 500 U.S. 391, 401-02 (1991); *Houston v. Dutton*, 50 F.3d

381, 385-86 (6th Cir.1995).  If an instruction is ambiguous and not necessarily erroneous, it can run

afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the

challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & 73 n.4;

*Boyde v. California*, 494 U.S. 370, 380 (1990).  Nonetheless, instructional errors of state law will

rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

> 2.     *Analysis*

Petitioner's claim that the jury instruction given at trial allowed the jury to convict the

defendant on less than an actual intent to kill is without merit. Under Michigan law, the elements

of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which,

if successful, would make the killing murder. *People v. Brown,* 267 Mich.App. 141, 147-148; 703

N.W.2d 230 (2005). As petitioner argues, there must be an actual intent to kill in order for there to

be a conviction of assault with intent to murder.

At the close of proofs, the trial court instructed the jury on the elements of assault with the

intent to commit murder (MCL 750.83) as follows:

> Now, the charge in Count 1 in this case is Assault With Intent to Commit
> Murder. The Statute says:
> "Any person who shall assault another person, with the intent to commit the
> crime of murder, shall be guilty of a felony."
> Now, there are certain elements, which the People must prove, beyond a
> reasonable doubt.
> The first is an assault. An assault is merely putting a person in fear of bodily
> harm. The perpetrator, at the time of the assault, must have the means to carry out the

assault.

     First of all, there must be an assault. Pointing a weapon, in an [sic] of itself is an assault. But for assault with intent to commit murder you have to go a step further. That at the time of the assault the perpetrator had the specific intent - specific intent is defined as a conscious decision of the mind to do a certain thing.

     That in this case not only was there an assault, but at the time the defendant intended to kill the victim.

T. Vol. III, pp 33-34.

The judge clearly distinguished between a mere assault, and an assault with intent to kill. The instructions made clear that petitioner had to have the intent to kill the victim in order for the jury to convict him under MCL 750.83. The judge explicitly stated in his instructions that "for assault with intent to commit murder you have to go a step further. That at the time of the assault the perpetrator had the specific intent - specific intent is defined as a conscious decision of the mind to do a certain thing." *Id.* at 34.

The trial judge's instructions were clear as to the required elements needed to convict petitioner of murder with intent to kill. Petitioner has failed to show that the jury instructions given by the judge at trial were fundamentally unfair and therefore is not entitled to habeas relief on this claim.

E.    *Refusal to Allow Defense Counsel to Conduct Jury Voir Dire*

    1.    *Legal Standard*

The Constitution does not guarantee a right to conduct *voir dire* in general or as to specific topics; rather, the Sixth and Fourteenth Amendments guarantee that a defendant will have a fair trial before an impartial tribunal.  As the Supreme Court has explained, "[t]he Constitution . . . does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).  While a proper *voir dire* of prospective jurors may be

necessary to safeguard this right, *see id.* at 729-30, the absence of a proper *voir dire* itself is not a constitutional violation. "Rather, the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair." *Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991); *see also*, *Davie v. Mitchell*, 291 F. Supp. 2d 573, 591 (N.D. Ohio 2003). Further, "[i]t is not sufficient to allege that *voir dire* was inadequate and as a result [petitioner] was denied an impartial jury. The burden is upon [petitioner] to demonstrate a strong possibility of jury bias." *Tuggle v. Thompson*, 57 F.3d 1356, 1369 (4th Cir.), *vacated on other grounds sub nom. Tuggle v. Netherland*, 516 U.S. 10 (1995); *cf. Turner v. Murray*, 476 U.S. 28, 33 (1986) (plurality op.) (quotation and alternations omitted) (explaining, in case alleging inadequate *voir dire* to explore racial bias of jurors, that "[t]he broad inquiry in each case must be whether under all of the circumstances presented there was a constitutionally significant likelihood that, absent questioning about racial prejudice, the jurors would not be indifferent as they stand unsworn."); *Wells v. Murray*, 831 F.2d 468, 474 (4th Cir. 1987) (extending *Turner* to claim of failure to conduct *voir dire* concerning effect of pretrial publicity).

"Neither due process nor the Sixth Amendment entitles a defendant to ask prospective jurors every question that might prove helpful. What matters is whether the defendant's inability to ask a question renders the proceeding 'fundamentally unfair' by making it impossible to identify an unqualified juror." *Bedford v. Collins*, 567 F.3d 225, 232 (6th Cir. 2009).

2. *Analysis*

The transcript shows that the trial judge went over the questions that the defense submitted for the jury. The judge used his discretion to determine which questions were proper for *voir dire*, and which were not. "Neither due process nor the Sixth Amendment entitles a defendant to ask

prospective jurors every question that might prove helpful. What matters is whether the defendant's inability to ask a question renders the proceeding 'fundamentally unfair' by making it impossible to identify an unqualified juror." *Bedford v. Collins*, 567 F.3d 225, 232 (6th Cir. 2009).

As stated above, the absence of a proper *voir dire* itself is not a constitutional violation. A petitioner seeking habeas relief must show that the court's failure to ask counsel's recommended *voir dire* questions rendered petitioner's trial "fundamentally unfair." *Virginia,* 500 U.S. at 425-26. Here, petitioner cannot demonstrate that he was denied a fundamentally fair trial because he is unable to demonstrate a possibility of jury bias that *voir dire* would have exposed and remedied. Because petitioner has not shown actual prejudice, habeas relief should be denied for this claim.

F.      *Improper Notice of the Habitual Offender Notice*

Petitioner claims that the prosecution did not give him proper notice under Michigan law of the change in his habitual offender status. This claim is an issue of state law and not cognizable for habeas relief.

1.      *Legal Standard*

It is well established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). 28 U.S.C. § 2254(a) provides that relief may only be granted to a petitioner "in custody in violation of the constitution of laws or treaties of the United States." In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact*." Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); accord *Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same).  See *generally*, *Tucker,* 404 U.S. at 448-49;

*Townsend*, 334 U.S. at 740-41.  It is well established, however, that a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence."  *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); see also, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447).  Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

2.      *Analysis*

The old version of Michigan's habitual offender statute required that habitual offender status be charged as a crime and proven to a jury. *See People v. Morales,* 240 Mich. App. 571, 576-83, 618 N.W.2d 10, 13-16 (2000) (discussing history of MICH. COMP. LAWS §§769.10-.13 and case law applying those provisions). In 1994, however, the Michigan legislature amended the habitual offender statute to make habitual offender status a sentence enhancement rather than a separate crime. As the *Morales* court explained:

> The landscape of the law was again fundamentally altered when the Legislature amended the habitual offender statutes in 1994. Under the current statutory scheme, the issue of defendant's status as an habitual offender is no longer a jury question. Now, the issue is to be resolved by the trial court either at sentencing or at a separate hearing held post conviction on the underlying charge. MCL 750.13; MSA 28.1085. Additionally, the prosecutor is no longer required to file a supplemental information. Instead, the prosecutor may file a written notice of intent to seek sentence enhancement.

*Morales,* 240 Mich. App. at 583, 618 N.W.2d at 16. Thus, under Michigan law the prosecutor was not required to file an information charging petitioner with being an habitual offender.

As a matter of due process, petitioner was entitled only to reasonable notice of the prosecutor's intent to seek an enhancement based on petitioner's habitual offender status and an opportunity to challenge that status. *See Oyler v. Boles*, 368 U.S. 448, 452 (1962). The record makes clear that petitioner received notice of his habitual offender fourth enhancement on June 3, 2005, before his trial even began, and that petitioner had the opportunity to address the issue at sentencing. Due process requires nothing more, *Id.,* at 452-54, and any failure by the prosecutor to comply with the Michigan habitual offender statute raises an issue of state law not cognizable on habeas review. *See Randolph v. Romanowski,* No. 2:06-CV-11201, 2007 WL 4181269, at *14 (E.D. Mich. Nov. 27, 2007) (Cleland, J.); *McCann v. Trombley,* No. 05-CV-72556, 2007 WL 2318730, at *14 (E.D. Mich. Aug. 10, 2007) (Steeh, J., adopting report of Komives, M.J.); *Taylor v. Jones,* No. 05-CV-73909, 2007 WL 1725384, at *12-*13 (E.D. Mich. June 13, 2007) (Edmunds, J.); *Ivory v. Jackson,* No. 04-CV-71279, 2005 WL 1030325, at *9 (E.D. Mich. Apr. 27, 2005) (Roberts, J.).

Petitioner does not challenge the accuracy of the information regarding his being charged as a fourth habitual offender; he only challenges the timeliness of the notice given to him by the prosecution. Petitioner was given notice of the habitual offender status before his trial had even begun and also had the opportunity to address his habitual offender status at sentencing. Due process was therefore satisfied. *Boles,* 368 U.S. at 452-53. Any further notice that petitioner claims was denied to him is a question of state law and not cognizable as a habeas claim.

G.     *Denial of Allocution*

Petitioner claims that he was denied his right to allocution. Petitioner is not entitled to relief

15

on this claim because, as the Sixth Circuit has recognized, "'[t]here is no constitutional right to allocution under the United States Constitution.'" *Cooey v. Coyle,* 289 F.3d 882, 912 (6th Cir. 2002) (quoting *Paquarille v. United States,* 130 F.3d 1220, 1223 (6th Cir. 1997) (citing *Hill v. United States,* 368 U.S. 424, 428 (1962)) (alteration in original). Thus, a claim that a petitioner was not afforded an opportunity to speak up at his sentencing hearing does not provide a basis for habeas corpus relief. *See Hill,* 368 U.S. at 428; *White v. Kapture,* No. 00-73974, 2001 WL 902500, at *4 (E.D. Mich. June 26, 2001) (O'Meara, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relied on this claim.

H.      *Denial of an Interpreter*

Petitioner claims that he was denied an interpreter at sentencing. However, the transcript clearly shows that there was an interpreter present and working on his behalf. (Sentencing Tr. at 4). This claim can form no basis for habeas relief. Further, throughout trial, sentencing, and direct appeal petitioner brought no claim alleging that the interpreter had failed to translate the proceedings. "Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation, would be an open invitation to abuse." *Valladares v. United States,* 871 F.2d 1564, 1566 (11th Cir. 1989). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

16

issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a

17

certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

      2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. Petitioner has not brought forth the evidence needed to prove his claims. To the contrary, a review of the transcripts from trial and from sentencing contradict many of petitioner's claims. The transcripts show that there were adequate jury instructions, that *voir dire* was conducted by the judge and the process was fair in selecting an impartial jury, and that there was indeed an interpreter present and available to the defense at trial and at sentencing. Petitioner's claim that he was denied allocution also does not merit habeas relief. Allocution is not a constitutionally protected right and cannot form the basis for habeas relief. The prosecution satisfied due process by making petitioner aware that it was going to charge him as a fourth habitual offender before the trial began.

    The resolution of petitioner's claims is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

K.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.



                                                    s/ Paul J. Komives
                                                    PAUL J. KOMIVES
                                                    UNITED STATES MAGISTRATE JUDGE
Dated: June 26, 2013

19

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was upon served upon Lazaro Roque and Counsel of Record on this date.

Dated: June 26, 2013          s/ Lisa C. Bartlett
                                    Case Manager